## STATE OF OREGON,
*Appellant - Cross-Respondent,*

*v.*

## NORMAN RICHARD NORMILE,
*Respondent - Cross-Appellant*

(84010177; CA A31525)

702 P2d 1160

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant - cross-respondent. With him on the briefs were Dave Frohnmayer, Attorney General, Salem, and James E. Mountain, Jr., Solicitor General, Salem.

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for respondent - cross-appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant was charged with theft in the first degree. ORS 164.055. The state appeals from a pretrial order suppressing evidence seized after the warrantless searches of a car rented by defendant. The dispositive issue is whether the searches or the seizures violated any right of defendant's. We conclude that they did not. Therefore, we reverse and remand for trial.

Defendant rented a car in Salem on Saturday, November 26, 1983. It was to be returned by 5 p.m. on Monday, November 28. It was not returned. On Tuesday, November 29, Johnson, the owner of the rental company, attempted to locate the missing car. He first called the business and home telephone numbers defendant had given on the rental application. The business telephone was disconnected, and the person who answered the home number did not know defendant. One of Johnson's employees went to the business address. No one was there. Johnson himself went to the home address. No one was there, and Johnson did not see the car. He then called Larry King, whom defendant had listed as "local contact" on the rental application. King, defendant's parole officer, told Johnson that he had been unable to locate defendant for several weeks. Johnson then called the Salem police and reported the car missing.

About 9 p.m. that evening, defendant was arrested in Albany for shoplifting. At the jail, the police found the keys to the rental car and the rental receipt amongst defendant's property. When they learned that he was on parole, the police contacted his parole officer, who informed them about the missing car. The car was found in the store's parking lot. The officer who found it shined his flashlight inside and saw an open container of alcohol and a syringe cap. He opened the unlocked door and searched the car's passenger compartment. After another officer had brought him the keys to the car, he opened the car's trunk, where he found property belonging to the State of Oregon which is the basis for the theft charge here. He locked the car and left it in the parking lot. At about 11 p.m. that night, the police advised the rental company that the car had been found. The company retrieved it the next morning.

Defendant testified at the suppression hearing that

he had telephoned the rental company on Monday evening, November 28, and had told them that he would return the car late. He did not specifically ask to extend the rental contract, however. He was told that the car had already been rented to another customer for Tuesday morning, November 29. Defendant said that he would return the car early Tuesday morning. At about 9 a.m. Tuesday morning, defendant called again and said that he would return the car by 10 a.m. that morning. He did not do so. At about 6 p.m. that evening he called again and said that he would be back later that evening. He was arrested that evening.

The rental agreement provided that the renter had to return the car to the owner at the location where rented, on the specified return date. Johnson testified that company policy required that rental extensions be made in person. Defendant testified that he was not told of that policy.

The trial court found, in relevant part:

"[D]efendant made statements of delayed return of [the] vehicle rather than seeking precise permission [to extend the rental].

" * * * * *

"[T]hat defendant had made somewhat persistent efforts to notify the rental company of the exact status of the car and when it would be returned. His ability to return the vehicle ended when he was arrested the evening of November 29, approximately one day after the designated time for return.

"* * * * *

"The police officer's reasons for the search were to inventory the vehicle's contents, secure the contents so that the vehicle could be returned to the owner in an empty condition and incidentally to look for possible controlled substances.

"Absent exigent circumstances there's no legal reason that this could be done without a warrant."

In a footnote to its memorandum opinion, the court added:

"There was nothing in the evidence indicating that the owner of the vehicle, Key Car Rental, consented to the search or even were [sic] asked or approached for their [sic] consent."

The court concluded that despite the existence of probable cause to search the car, the searches and seizures were

unconstitutional, because "there did not appear exigent circumstances to search the vehicle." The court suppressed all the evidence seized from the car except the open container of alcohol and the syringe cap, which it found were in "plain view" and held were "properly seized." *See State v. Drummond,* 6 Or App 558, 563, 489 P2d 958 (1971). The order of suppression was error.

Defendant was in constructive possession of the car when he was arrested. He was entitled to continued possession as against anyone who did not have a greater right to possession. *See* Prosser, *Torts* § 14 (4th ed 1971). Any interference with that right would be a trespass. The owner's right was superior to defendant's, because the rental period had expired. The rental agreement specifically provided that the rental company "reserves the right to repossess Vehicle at any time without demand at Customer's expense if Vehicle is used in violation of this Agreement * * *."

At the time they searched the car, the police knew that it had been reported missing and that the owner wanted it back. They took possession of the car on behalf of the owner. So far as defendant is concerned, when the police searched the car, they stood in the owner's shoes. The case is similar to hotel room search cases in which the police entered the room with authority from the management. *See State v. Bonner,* 49 Or App 849, 621 P2d 87 (1980); *State v. Taggart,* 14 Or App 408, 512 P2d 1359, *cert den* 419 US 877 (1974); *People v. Van Eyk,* 56 Cal 2d 471, 15 Cal Rptr 150, 364 P2d 326, 330 (1961), *cert den* 369 US 824 (1962); *State v. Roff,* 70 Wash 2d 606, 424 P2d 643, 646-647 (1967). Any property interest defendant may have had was overcome by the true owner, acting through the police.[1]

Defendant cross-appeals the partial denial of his motion to suppress. We find no error.

On appeal reversed and remanded for trial; affirmed on cross-appeal.

---

[1] Our disposition of this case on the theory that defendant's interest in the car was inferior to that of the party who authorized the challenged police activity, also disposes of defendant's claims under the Fourth and Fourteenth Amendments.