Argued and submitted December 15, 1986, reversed and remanded for new trial
April 22, 1987

STATE OF OREGON,
*Respondent,*

*v.*

NICHOLAS VICTOR APODACA,
*Appellant.*

(82-3621-C-3; CA A39294)

735 P2d 1264

G. Philip Arnold, Ashland, argued the cause for appellant.
With him on the brief was Drescher and Arnold, Ashland.

Terry Ann Leggert, Assistant Attorney General, Salem argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992. He contends that the trial court erred in denying his motion to suppress evidence seized by the police during a warrantless search of the house in which he was arrested. The dispositive issue is whether the police lawfully entered the house. We conclude that they did not. Therefore, we reverse.

About 2:30 a.m., Trooper McNielly investigated a one car accident on Lampman Road near Gold Hill. The car had rolled over and was seriously damaged. No one was in or around it. It was registered to defendant at an address on Ramsey Road in Gold Hill. Inside the car, McNielly found an envelope addressed to "M. Apodaca," 2126 Lampman Road, Gold Hill. That address was about a mile from the accident scene. McNielly learned from people in that area that defendant was known as "Manuel."

McNielly met Trooper Lacy at the Lampman Road address. They found that the front door screen was broken and that the front door was open. Standing outside, they could see marijuana plants hanging from the ceiling of the bedroom. After knocking several times and receiving no response, they walked around the house and looked through the bedroom window. They knocked on the window but received no response. After knocking on the front door several more times, they entered the house. They found defendant asleep in the back, where the marijuana plants had been seen. They arrested him for possession of a controlled substance and seized the plants.

Defendant moved to suppress the marijuana.[1] At the suppression hearing, McNielly testified:

"[W]e knew we had marijuana in there, and we were debating whether we should enter or wait for a warrant, but there were other factors to consider, considering that we may have an accident victim, an injured accident victim in there, and we may also have a drunk driver, in which case as time went by

---

[1] The record indicates that defendant did not live at the 2126 Lampman Road address, but lived about three houses away. At trial, the state did not raise the issue of defendant's standing to challenge the lawfulness of the officers' entry. See ORS 133.683.

that the evidence of that drunk driver we were losing with the blood alcohol, and we may also have a burglary."

The state argued that the entry was permissible, because (1) the police saw marijuana inside the house, (2) there may have been a seriously injured person inside the house who urgently needed medical attention, (3) there may have been a drunk driver inside the house and the entry was necessary to preserve evidence of the driver's blood-alcohol level before it dissipated and (4) the police believed that a burglary was being committed or had been committed. The trial court denied defendant's motion, stating only:

> "Under the circumstances of this case, I am of the view that the officer was lawfully on the premises. Being there lawfully, he did observe the marijuana from a lawful vantage point. Again, under the peculiar facts of this case, the conduct was reasonable. The motion to suppress is denied * * *."[2]

Defendant contends that that was error.

On appeal, the state has abandoned its arguments that a warrantless entry was permissible, either because the police saw marijuana inside the house[3] or because there may have been a drunk driver inside and the entry was necessary to preserve evidence of the driver's blood-alcohol level before it dissipated.[4] Nonetheless, because those arguments were made in the trial court and may have been relied on by the court, we have considered them. *See State v. Nash,* 41 Or App 789, 793, 598 P2d 1297, *rev den* 288 OR 141 (1979). We conclude that, on these facts, neither argument has merit.

The state first contends that the entry was permissible under the emergency doctrine exception to the warrant

---

[2] The trial court did not explain which of the state's arguments it found persuasive. Our review would be facilitated if trial courts would explain the bases of their decisions. That is particularly so when, as here, the state advanced multiple arguments. *See State v. Johnson/Imel,* 16 Or App 560, 519 P2d 1053 (1974).

[3] Seeing marijuana from outside the house may have given the troopers probable cause to obtain a search warrant. *See State v. Matsen,* 287 Or 581, 601 P2d 784 (1979); *State v. Peller,* 287 Or 255, 598 P2d 684 (1979); *State v. Olson,* 287 Or 157, 598 P2d 670 (1979); *see also State v. Lee,* 120 Or 643, 650-651, 253 P 533 (1927).

[4] *See Welsh v. Wisconsin,* 466 US 740, 104 S Ct 2091, 80 L Ed 2d 732 (1984).

requirement.[5] It argues that there may have been a seriously injured person inside the house who urgently needed medical attention. Alternatively, it argues that there was an emergency, because the police believed that a burglary was being committed or had been committed.

In *State v. Miller,* 300 Or 203, 229, 709 P2d 225 (1985), *cert den,* ___ US ___, 106 S Ct 1793 (1986), the Supreme Court stated:

> "The emergency doctrine is a carefully and narrowly drawn exception to the warrant requirement. When the premises is a dwelling, the state must make a strong showing that exceptional emergency circumstances truly existed. *Vale v. Louisiana,* 399 US 30, 34, 90 S Ct 1969, 26 L Ed 2d 409 (1970)."

In *State v. Jones, supra,* we explained:

> "The emergency doctrine is founded upon the actions of police officers which are considered reasonable under the circumstances that faced the officer at the time of entry. The element of reasonableness to enter the premises is supplied by the compelling need to assist persons in need. * * * The inquiry is whether the facts available to the officer would lead a prudent and reasonable officer to see a need for immediate action *to protect life or property. Wayne v. United States,* 318 F2d 205 (DC Cir 1963). When faced with what he reasonably and in good faith believes to be an emergency, an officer's action should not be reviewed with severe judicial scrutiny in light of a hindsight analysis of the evidence. Even if the officer's conclusion that an emergency situation existed is ultimately determined to be erroneous, his actions should be upheld if the circumstances, as they appeared at the time of entry, would lead a prudent and reasonable officer to conclude immediate action was necessary. An officer facing a perceived emergency must make a hasty decision. He is not afforded the luxury of calm detached deliberation as are the judges reviewing his conduct." 45 Or App at 620. (Emphasis supplied.)

*See United States v. Robinson,* 533 F2d 578, 580 (DC Cir), *cert den,* 96 S Ct 1432 (1976).

---

[5] *See Mincey v. Arizona,* 437 US 385, 98 S Ct 2408, 57 L Ed 2d 290 (1978); *State v. Davis,* 295 Or 227, 238, 666 P2d 802 (1983); *State v. Jones,* 45 Or App 617, 620, 608 P2d 1220, *rev den* 289 Or 337 (1980); *State v. Frink,* 42 Or App 171, 600 P2d 456 (1979); *State v. Plant,* 28 Or App 771, 773, 561 P2d 647 (1977); *State v. Corbin,* 15 Or App 536, 516 P2d 1314 (1973), *rev den* (1974); *see also,* LaFave, *Search and Seizure,* (2nd ed) (1987) § 6.6(a), (b).

■    The police knew that there had been a single car accident resulting in serious damage to the car. They found a letter in the car addressed to a person with the same surname as that of the car's registered owner, although at a different address. On arriving at that address about an hour later, they found that the front door screen was broken and the front door was open. Those facts do not constitute a "strong showing" that a seriously injured person might be inside the house urgently needing medical attention. *State v. Miller, supra; see United States v. Spetz,* 721 F2d 1457 (9th Cir 1983). Further, a broken front door screen and an open front door would not lead a prudent and reasonable officer to believe that a burglary was being committed or had been committed. *See Collier v. City of Portland,* 57 Or App 341, 345-46, 644 P2d 1139 (1982); *State v. Schrag,* 21 Or App 655, 536 P2d 461 (1975). Thus, the state failed to make a "strong showing" that there was a need for immediate police action to protect property. *State v. Miller, supra,* 300 Or at 229. We conclude that the state failed to show that the warrantless entry was permissible under the emergency doctrine exception.

■    The state next contends that the police entered the house in the exercise of their "community caretaking" function.[6] As a matter of law, the evidence in this case would not support a warrantless entry on that basis.

Because the warrantless entry of the house was unlawful, the subsequent seizure of the marijuana was unlawful. Therefore, the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.

---

[6] *See Cady v. Dombroski,* 413 US 433, 441, 93 S Ct 2523, 37 L Ed 2d 706 (1973); *United States v. Miller,* 589 F2d 1117, 1125 (lst Cir), *cert den* 440 US 958 (1978); *State v. Perry,* 298 Or 21, 26, 688 P2d 827 (1984); *State v. Atkinson,* 298 Or 1, 9 n 4, 688 P2d 832 (1984); *State v. Newman,* 292 Or 216, 637 P2d 143 (1981), *cert den* 457 US 1111 (1982); *State v. Walker,* 135 Or 680, 296 P 850 (1931); *State v. Okeke,* 82 Or App 393, 728 P2d 872 (1986), *rev allowed* 303 Or 261 (1987); *State v. Rounds,* 73 Or App 148, 698 P2d 71, *rev den* 299 Or 663 (1985); *State v. Elliott,* 6 Or App 249, 486 P2d 1296 (1971); *See also, LaFave, supra,* § 6.6(c).